UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEX GEOVANNY RIVAS REYES,

                      Petitioner,

       -v-

MARKWAYNE MULLIN *et al.*,

                      Respondents.

26 Civ. 4334 (PAE)

OPINION & ORDER

---

**PAUL A. ENGELMAYER, District Judge:**

On March 17, 2026, petitioner Alex Giovanny Rivas Reyes ("Rivas Reyes"), a citizen of Honduras, was detained by U.S. Immigration and Customs Enforcement ("ICE"). On May 24, 2026, he petitioned for a writ of habeas corpus. Dkt. 1 ("Petition"). Rivas Reyes argues that his detention, which is discretionary pursuant to 8 U.S.C. § 1226(a), was unlawful since its inception because ICE did not make an individualized assessment of his danger or flight risk when he was first detained. Rivas Reyes seeks immediate release or, in the alternative, a bond hearing.

Respondents (collectively, the "Government") oppose the Petition. Until recently, the Government had asserted that Rivas Reyes was detained mandatorily, pursuant to 8 U.S.C. § 1225(b)(2)(A). But the Second Circuit's recent decision in *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), rejected that justification. It held that noncitizens in Rivas Reyes's position—persons arrested and detained by ICE years after their entry, without inspection and admission into the United States—are detained pursuant to § 1226(a). *Id.* at 71. The Government now argues that, notwithstanding its previous view that § 1226(a) did not apply, it complied with § 1226(a). It argues that ICE (1) exercised discretion in initially detaining Rivas Reyes because his detention was based on his prior criminal conviction for assault and (2) conducted an individualized

custody determination on May 25, 2026, after *Cunha* compelled it to acknowledge that his detention was subject to § 1226(a).

For the reasons that follow, the Court grants in part and denies in part the Petition. The Court denies Rivas Reyes's request for immediate release. But it orders the Government, within one week, to provide Rivas Reyes with a bond hearing before an immigration judge ("IJ").

## I.      Background

### A.      Arrival and Early Life in the United States (2015)

On December 4, 2015, Rivas Reyes, at age 16, entered the United States without inspection and was apprehended upon crossing the border. Dkt. 8 ("Nevin Decl.") ¶ 4. On December 5, 2015, he was transported to a juvenile detention facility. *Id.* ¶ 7. He was served with a notice to appear ("NTA"), charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present without being admitted or paroled). *Id.* ¶ 8.

On December 6, 2015, Rivas Reyes was transported to the Office of Refugee Resettlement. *Id.* ¶ 10. On December 17, 2015, he was released from custody and reunified with his mother in Pennsylvania. *Id.* ¶ 11. Rivas Reyes attended high school in Monroe, New York, and worked as a handyman and at carwashes. Pet. ¶ 25.

### B.      Criminal Arrest and ICE Encounter (2019)

On January 12, 2019, Rivas Reyes was arrested by the Monroe Village Police Department in Monroe, New York. Nevin Decl. ¶ 12. He was charged with operating a motor vehicle while impaired by drugs, under N.Y. Vehicle & Traffic Law § 1192(4), and unlawful possession of marijuana, under N.Y. Penal Law § 221.05. *Id.* On February 6, 2019, he was arraigned on various related charges. *Id.* ¶ 13. The disposition of that proceeding is unknown. *Id.*

2

On April 24, 2019, ICE arrested Rivas Reyes in Monroe, New York, pursuant to a form I-200 arrest warrant. *Id.* ¶ 14. ICE transported him to Newburgh, New York for processing. *Id.* Officers conducted an oral interview of Rivas Reyes. *Id.* ¶ 15. He admitted that he is a citizen of Honduras; that he entered the United States unlawfully at 16 years old; and that he did not possess immigration documents that authorized him to remain in the country. *Id.* ICE served Rivas Reyes with an NTA, charging him as inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) (noncitizen present without being admitted or paroled) and 1182(a)(7)(A)(i)(I) (inadequate documentation at time of application for admission). *Id.* ¶ 16. Rivas Reyes was transferred to the Orange County Jail ("OCJ") in Goshen, New York, where he was held pursuant to § 1226(a). *Id.* ¶ 17.

### C.     Removal Proceedings (2019–2022)

On April 26, 2019, the Department of Homeland Security ("DHS") notified the Executive Office of Immigration Review ("EOIR") that Rivas Reyes was detained at OCJ. *Id.* ¶ 18. Between May and July 2019, Rivas Reyes appeared with counsel at a series of master calendar hearings. *Id.* ¶¶ 19–22. On August 14, 2019, Rivas Reyes appeared with counsel at a bond hearing. *Id.* ¶ 23. The IJ granted him bond in the amount of $2,000. *Id.* The next day, upon posting of that bond, Rivas Reyes was released from custody. *Id.* ¶ 24.

On June 18, 2020, Rivas Reyes applied for special immigrant juvenile status. *Id.* ¶ 25. On September 23, 2020, United States Citizenship and Immigration Services ("USCIS") approved his petition. *Id.* On May 31, 2022, DHS moved to dismiss removal proceedings against Rivas Reyes to allow him to pursue adjustment of status with USCIS. *Id.* ¶ 26. On

June 10, 2022, the IJ granted DHS's motion and dismissed the proceedings without prejudice. *Id.*

### D.    Criminal Arrest and Conviction (2022)

On June 7, 2022, Rivas Reyes was arrested by the Monroe Village Police Department and charged with (1) assault in the third degree, under N.Y. Penal Law § 120.000; (2) disorderly conduct, under N.Y. Penal Law § 240.20; and (3) harassment in the second degree, under N.Y. Penal Law § 240.26. *Id.* ¶ 27. On March 29, 2023, he pled guilty to assault in the third degree. *Id.* He was sentenced to a three-year order of protection. *Id.*

### E.    Current Detention and Removal Proceedings (2026)

On February 18, 2026, ICE received a referral from the Orange County probation office as to Rivas Reyes, who had reported to the probation office in connection with his assault conviction. *Id.* ¶ 28. That day, after ICE's records check revealed that Rivas Reyes did not have lawful status in the United States, ICE prepared an I-200 arrest warrant. *Id.* ¶¶ 28–29.

On March 17, 2026, ICE arrested Rivas Reyes in Goshen, New York, and transported him to Newburgh, New York for processing. *Id.* ¶¶ 30, 32. He was taken into custody at OCJ, where he was held pursuant to § 1225(b)(2)(A). *Id.* ¶ 32. ICE served Rivas Reyes with an NTA, which again charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *Id.* ¶ 33. On March 20, 2026, that NTA was filed with the EOIR, thereby commencing removal proceedings against Rivas Reyes. *Id.*

In March and April 2026, Rivas Reyes appeared, initially without and then with counsel, at master calendar hearings in immigration court. *Id.* ¶¶ 35–36. On April 23, 2026, he filed a motion to terminate his removal proceedings, which the IJ denied. *Id.* ¶ 37. On May 13, 2026, Rivas Reyes filed applications for relief and to register his permanent residence and adjust his

status, and filed another motion to terminate his removal proceedings. *Id.* ¶ 38. On May 14, 2026, the IJ denied the motion to terminate, on the grounds that Rivas Reyes had engaged in criminal conduct after dismissal of his removal proceedings in June 2022, and had not attempted to adjust his status. *Id.* ¶ 39. The IJ scheduled a merits hearing for July 13, 2026. *Id.*

**F.    This Litigation**

On May 24, 2026, Rivas Reyes filed this petition. Dkt. 1. On May 25, 2026, ICE determined, in light of the Circuit's decision in *Cunha*, that the basis for Rivas Reyes was § 1226(a) instead of § 1225(b)(2)(A). It completed an initial custody determination. Nevin Decl. ¶ 40. On June 2, 2026, the Government opposed the petition. Dkt. 7 ("Opp'n"). On June 5, 2026, Rivas Reyes replied. Dkt. 9 ("Reply").

**II.    Applicable Legal Standard**

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**III.    Discussion**

As the parties agree, individuals in Rivas Reyes's position—who were arrested and detained by ICE years after their entry without inspection and admission into the United States—are detained pursuant to § 1226(a). *See* Opp'n at 9; Reply at 1; *see also Cunha*, 175 F.4th at 71. Rivas Reyes's detention was accordingly discretionary, rather than mandatory, and he was entitled to "an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention." *Sharifzoda v. Orange Cnty. Jail*, No. 26 Civ. 2486, 2026 WL 851378,

at *1 (S.D.N.Y. Mar. 27, 2026) (citing 8 C.F.R. § 1236.1(d)(1)). The Court finds that Rivas Reyes was afforded the former, but not the latter.[1]

The record reflects that, consistent with the Government's claim that Rivas Reyes was detained discretionarily based on individualized circumstances, he was detained based on his 2023 criminal conviction for assault. On February 18, 2026, the Orange County probation office, to which Rivas Reyes reported pursuant to his order of protection, notified ICE of Rivas Reyes's conviction. Nevins Decl. ¶ 28. ICE then conducted a records check, which revealed that Rivas Reyes did not have lawful status in the United States. *Id.* That day, ICE prepared an I-200 arrest warrant for Rivas Reyes. *Id.* This evidence supports that ICE decided to detain Rivas Reyes based on his prior conviction—indeed, it moved to detain him almost immediately after having been alerted to that conviction. *See id.* ¶¶ 28 (ICE "received a referral" for Rivas Reyes, who "was reporting to probation for a conviction of Assault"), 30 (ICE arrested Rivas Reyes after having "been informed by OCJ Probation that Petitioner was convicted of Assault in the Third Degree and was sentenced to three-years probation"). ICE accordingly, consistent with § 1226(a), exercised its discretion in detaining Rivas Reyes. *See, e.g., Martinez-Lopez v. Reid*, No. 26 Civ. 2893 (PAE), 2026 WL 1133933, at *4 (S.D.N.Y. Apr. 27, 2026) (ICE exercised discretion in detaining petitioner "based on the individualized circumstances presented by his arrest"); *Rahman v. Catletti*, No. 26 Civ. 3054 (PAE), 2026 WL 1180138, at *2 (S.D.N.Y. Apr. 30, 2026) (same based on arrest for assault the year prior); *Sharifzoda*, 2026 WL 851378, at *1–2 (evidence suggested exercise of "some discretion" where petitioner was detained during routine check-in shortly after domestic violence arrest); *Gunduzalp v. Joyce*, No. 26 Civ. 2330, 2026

---

[1] Because the Court finds that ICE exercised its discretion in initially detaining Rivas Reyes, the Court does not consider the effect of ICE's May 25, 2026 custody determination.

WL 948736, at *3 (S.D.N.Y. Apr. 8, 2026) (same where Government acted on tip that petitioner presented danger to the community).

ICE did not, however, provide Rivas Reyes a bond hearing at the outset of his detention, as applicable regulations required.[2] *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. § 1236.1(d)(1))). Because "the sole process that Petitioner was improperly denied was the ability to obtain a bond hearing," a bond hearing is the "appropriate remedy." *E.A.C.F. v. Areta*, No. 26 Civ. 3047, 2026 WL 1213414, at *3 (S.D.N.Y. May 4, 2026); *see, e.g.*, *Jimenez v. Joyce*, No. 26 Civ. 429, 2026 WL 251889, at *1 (S.D.N.Y. Jan. 30, 2026) (bond hearing, not release, was "appropriate remedy" where noncitizen detained based on prior convictions); *Perez Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026) (ordering bond hearing where individualized assessment was made "despite ICE's (incorrect) understanding that its detention of Petitioner was mandatory"); *Guachambala v. Lyons*, No. 26 Civ. 1835, 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026) (same where evidence "suggests the Government may have exercised some discretion in detaining Petitioner" based on outstanding criminal charge).

---

[2] The Government argues that, because Rivas Reyes has not yet requested a bond hearing before an IJ, he "should be required to exhaust his request for a bond hearing with the immigration court in the first instance." Opp'n at 15. The applicable regulation states that the respondent "may" request review of an initial custody determination by an IJ, 8 C.F.R § 1236.1(d)(1), but the Government has not shown—and the Court has not found precedent requiring—that a petitioner must make such a request in order for the district court, on his motion, to order a bond hearing. At least one court in this District has ordered a bond hearing where the noncitizen had filed a habeas petition before requesting such a hearing before an IJ. *See Romero v. Francis*, No. 25 Civ. 8112, 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025). And in the circumstances here, where the Government (until *Cunha*) contended that Rivas Reyes was detained under a statute that did not require a bond hearing, it is reasonable for the Court to consider, alongside the request for outright release, the request for that lesser remedy.

Rivas Reyes's arguments in support of outright release are unavailing.

First, he argues that the Government has not demonstrated that, in detaining him, it made an individualized custody determination. Reply at 4. He does not dispute that his detention was based on a referral from the state probation office, but he argues that that does not qualify as an exercise of discretion because it is unclear "why that referral prompted Mr. Rivas's arrest" and the Government "do[es] not elucidate the nature of the 'referral' received." *Id.* at 5. But the record is not ambiguous. It supports that the probation office alerted ICE to Rivas Reyes's assault conviction because he is a noncitizen, and that ICE, based on that conviction, concluded that Rivas Reyes presented a danger to the community and/or flight risk, and prepared an arrest warrant that same day.

Second, Rivas Reyes argues that his case is distinguishable from recent decisions by this Court finding exercises of discretion by ICE. He notes that ICE detained the noncitizen in *Martinez-Lopez* just days after his arrest on criminal charges, whereas here, ICE detained Rivas Reyes three years after his criminal conviction. But the proper focus is not on the timing of Rivas Reyes's conviction relative to his detention, but instead on when ICE learned of his conviction, which virtually immediately prompted ICE to detain him. *See, e.g., Jimenez*, 2026 WL 251889, at *1 (ICE exercised individualized discretion in detaining noncitizen—with multiple dated convictions—based on referral from county probation office); *see also Rahman*, 2026 WL 1180138, at *1 (ICE exercised discretion in detaining noncitizen based on arrest from year prior). Rivas Reyes also notes that, in *Rahman*, unlike in this case, ICE expressly stated it had detained the noncitizen because of his prior arrest. But here, it is clear, based on ICE's preparation of the arrest warrant the same day it received the referral from probation, that ICE

detained Rivas Reyes based on his prior conviction. That is circumstantially apparent, notwithstanding the absence of an express statement from ICE to that effect in the record.

The Court thus finds that Rivas Reyes is entitled to a bond hearing but not release. At that hearing, consistent with due process, the Government is to "bear[] the burden of proving, by clear and convincing evidence, that [Rivas Reyes] is a danger to the community or a flight risk." *Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026); *see, e.g.,* *Rahman*, 2026 WL 1180138, at *1; *Martinez-Lopez*, 2026 WL 1133933, at *3–4; *Perez Guedez*, 2026 WL 962575, at *2; *E.A.C.F.*, 2026 WL 1213414, at *3.

**CONCLUSION**

For the above reasons, the Court grants Rivas Reyes's petition for a writ of habeas corpus, insofar as the Petition seeks a bond hearing, but denies the Petition, insofar as it seeks immediate release.

By **June 19, 2026**, an IJ shall hold a bond hearing for Rivas Reyes, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Rivas Reyes is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining the amount of any bond imposed, the IJ shall consider Rivas Reyes's ability to pay.

Within 72 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the bond hearing. It shall also promptly order a transcript or recording of the hearing and file such on the docket.

The Clerk of Court is respectfully directed to mail a copy of this decision to Rivas Reyes at the address on file.

9

SO ORDERED.

Dated: June 12, 2026
      New York, New York

PAUL A. ENGELMAYER
United States District Judge

10